UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MY IMAGINATION, LLC, a
Michigan Limited Liability Company,

    Plaintiff,

v.                                                                        Case No. 14-13321

M.Z. BERGER & CO., INC., a                            HON. AVERN COHN
foreign corporation; M.Z. BERGER
& CO., INC., d/b/a MZB INK; and
MZB IMAGINATION, LLC, a New York
Limited Liability Company,

    Defendants.
_____/

## MEMORANDUM AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT TO LIMIT PLAINTIFF TO
## NO MORE THAN NOMINAL DAMAGES (Doc. 122)[1]

I. Introduction

This is a business dispute. Plaintiff MY Imagination LLC ("MY Imagination") sued defendant MZ Berger & Co. Inc. and MZB Imagination, LLC ("MZB") asserting contract and tort claims arising out an Asset Purchase Agreement (APA) governed by New York law. In broad terms, the APA governed the sale of MZB's stationary business to MY Imagination. As will be explained, the Court granted summary judgment to MZB. MY Imagination appealed. The Court of Appeals for the Sixth Circuit affirmed in part and reversed in part, finding questions of fact existed on two of MY Imagination's contract

---

[1]Although originally scheduled for hearing, upon review of the parties' papers, the Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

claims.

Before the Court is MZB's motion for summary judgment limiting MY Imagination to no more than nominal damages. MY Imagination says that it is entitled to lost profits and relies on an expert report to establish the amount. For the reasons that follow, the motion will be granted. Should liability be established, the record is clear that MY Imagination is not entitled to lost profits but rather may be awarded only nominal damages.

II. Background

The Court of Appeals for the Sixth Circuit set forth the relevant background and procedural history:

> For students, the back-to-school season signals new beginnings. For retailers, it means major profits: American consumers spend nearly five-billion dollars on school supplies every year. **A new stationery company called MY Imagination wanted to enter this lucrative market**. Since the company needed inventory, licenses, and retailer relationships to get the ball rolling, **it decided to buy the stationery division at M.Z. Berger, a well-established consumer-goods wholesaler**.
> M.Z. Berger's assets were an attractive target. The company held licensing agreements with entities like Lego, Universal Studios [Universal], and pop sensation One Direction. These popular brands would likely lead to large sales with school-age kids. And M.Z. Berger agreed to help transfer these licenses to MY Imagination as part of the deal. MY Imagination says that M.Z. Berger promised to exit the stationery industry too.
> Things went awry shortly after the companies finalized the sale. According to MY Imagination, M.Z. Berger failed to help transfer its licensing agreements and did not exit the stationery industry as promised. MY Imagination sued for breach of contract, fraudulent inducement, and conversion. The district court granted summary judgment to M.Z. Berger on all counts. MY Imagination now appeals. We affirm in part and reverse in part.

MY Imagination, LLC. v. M.Z. Burger & Co., No. 17-1218 at p. 1 (6th Cir. Feb. 16, 2018) (unpublished) (footnote omitted)(emphasis added).

2

Specifically, the Sixth Circuit affirmed the dismissal of MY Imagination's tort claims and some of its contract claims. As to the contract claims, the Sixth Circuit said:

> The district court granted M.Z. Berger summary judgment on all of MY Imagination's contract claims after finding that MY Imagination could not prove any actual damages. **But the court's emphasis on actual damages was misplaced. In New York, nominal damages are "always available for a breach of contract."** Kronos, Inc. v. AVX Corp., 612 N.E. 2d 289, 292 (N.Y. 1993).

Id. at p. 2-3 (emphasis added). The Sixth Circuit went on to find that there were disputed issues of material fact on MY Imagination's contract claims as to whether (1) MZB used "commercially reasonable" efforts to help MY Imagination acquire its licenses and (2) whether after selling its goodwill, MZB solicited its former retail customers on behalf of Universal's new product line.

On remand, MY Imagination seeks "lost profits" damages and relies on the expert report of Rodney Crawford, an accountant, who provides two measure of lost profits.

MZB has moved for summary judgment contending that the record does not support a claim for "lost profits" and therefore MY Imagination is limited to only nominal damages if it prevails on liability.

### III. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325

(1986). Rule 56 provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support a fact.

Fed. R. Civ. P. 56(c)(1). The Court "must view the evidence in the light most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995).

## IV. Analysis

### A. Initial Comment

As an initial matter, MZB has not argued that the Sixth Circuit's opinion precludes MY Imagination from seeking lost profits. The question before the Court is whether MY Imagination has made out a triable claim for lost profit damages[2] under New York law.

### B. NY Law on Lost Profits

The New York Court of Appeals has a three-part test for entitlement to lost profit damages:

> Loss of future profits as damages for breach of contract have been permitted in New York under long-established and precise rules of law. First, it must be demonstrated with certainty that such damages have been caused by the breach and, second, the alleged loss must be capable of proof with reasonable certainty.

---

[2]MY Imagination previously sought rescissory damages and filed a motion in limine requesting a ruling that it could assert a claim for such damages if it proved liability. (Doc. 67). Although the Court found the motion moot in granting MZB's motion for summary judgment, on remand MY Imagination has abandoned its claim for rescissory damages. See Crawford Report (MZB's Exhibit D) at ¶ 21.

4

> In other words, the damages may not be merely speculative, possible or imaginary, but must be reasonably certain and directly traceable to the breach, not remote or the result of other intervening causes (Wakeman v Wheeler & Wilson Mfg. Co., 101 NY 205). In addition, there must be a showing that the particular damages were fairly within the contemplation of the parties to the contract at the time it was made (Witherbee v Meyer, 155 NY 446).

Kenford Co. v. County of Erie, 67 N.Y.2d 257,261 (1986) ("Kenford I").

MZB says that MY Imagination cannot satisfy any of the three elements. Each element is addressed in turn below.

1. Causation

Under Kenford I, a party must first prove that its lost profits were caused by the breach. New York law provides:

> [I]n order to hold a party liable for lost profits, a plaintiff must establish proximate causation by the defendant. See Carco Grp., Inc. v. Maconachy, 718 F.3d 72, 82 (2d Cir. 2013) (noting that "lost profits are consequential damages that must be proven with reasonable certainty . . . and a court must make appropriate findings as to proximate cause"); Int'l Minerals & Res., S.A. v. Pappas, 96 F.3d 586, 597 (2d Cir. 1996) (noting that special or consequential damages are subject to the rules of proximate cause). If a plaintiff cannot establish "the requisite causal connection between the alleged bad acts and the harm it claims," it cannot survive a motion for summary judgment. Bulldog New York LLC v. Pepsico, Inc., 8 F. Supp. 3d 152, 178 (D. Conn. 2014). "Conclusory allegations, conjecture, and speculation" in this regard are "insufficient to create a genuine issue of fact." Kerzer v. Kingly Mfg., 156 F.3d 396,400 (2d Cir. 1998).

ScentSational Techs, LLC v. Pepsico, 201 U.S. Dist. Lexis 91180, *18 (S.D.N.Y. May 23, 2018).

Thus, MY Imagination must establish, on a license-by-license basis that, "but for" MZB's alleged failure to use "commercially reasonable efforts," it would have obtained individual licenses - which MZB did not guarantee would be transferred. Likewise, My Imagination must show that any solicitation of former retail customers by MZB directly caused MY Imagination to lose business.

5

MY Imagination did not take discovery of any licensor other than Universal. There is no statement from any licensor to the effect that "if MZB had done X, then Licensor A would have transferred the license to MY Imagination." Even as to Universal, MY Imagination did not ask its witness at deposition as to the impact "commercially reasonable efforts" by MZB in June 2014 which might have had on Universal's decision.

What the record does show that it beyond obtaining the Lego license, a dispute existed between MY Imaginations' principals - Yu and Rosenbaum - as to whether to enter into any other licenses. This dispute resulted in MY Imagination twice rejecting a license from Nickelodeon and not contacting any licensor other than Universal after the Licensor Letters were sent out. Further, MY Imagination admits that Universal decided for its own reasons not to assign the license to it, but to instead another company in the industry. There is simply no evidence in the record that, taken as true, would allow the conclusion that Universal (or any other licensor) would have offered MY Imagination a license even if MZB had provided the reasonable commercial efforts MY Imagination says it did not, or that, unlike with Nickelodeon, MY Imagination would have accepted the license. To conclude that any particular license would have transferred - and that MY Imagination would have accepted the license - is speculative and fails to satisfy the causation element of <u>Kenford I</u>. <u>See Madcap Acquisitions LLC v. American Towers LLC</u>, 2016 N.Y. Misc. LEXIS 2714, *11 (N.Y. Sup. Ct. 2016) (granting summary judgment and holding that claim for lost profits damages was "nothing more than speculative projection" where dependent on assumptions that plaintiff would enter into agreement with third-party under no contractual obligation to do so); <u>Olsenhaus Pure</u>

Vegan, LLC v. Electric Wonderland, Inc., 116 A.D.3d 449,450 (N.Y. App. Div. 2014) (rejecting lost profits claim where based upon "speculative" assumption as to duration of contract).

## 2. Reasonable Certainty

MY Imagination must also establish its lost profits with "reasonable certainty." "The damages may not be merely speculative, possible or imaginary." Kenford I, 67 NY.2d at 261. This is particularly true when dealing with a new business:[3]

> If it is a new business seeking to recover for loss of future profits, a stricter standard is imposed for the obvious reason that there does not exist a reasonable basis of experience upon which to estimate lost profits with the requisite degree of reasonable certainty (Cramer v Grand Rapids Show Case Co., 223 NY 63; 25 CJS, Damages,§ 42 [b]).

Id. "Projections of future profits based upon 'a multitude of assumptions' that require 'speculation and conjecture' and few known factors do not provide the requisite certainty." Schonfeld v. Hilliard, 218 F.3d 164, 172 (2d Cir. 2000). Expert testimony is required to establish that lost profits is "capable of measurement based upon known reliable factors without undue speculation." Id.; Celebrity Cruises, Inc. v. EssefCorp., 478 F. Supp. 2d 440, 451-52 (S.D.N.Y. 2007).

Here, Crawford fails to establish that MY Imagination's alleged lost profits are "capable of measurement based upon known reliable factors without undue speculation." Schonfeld, 218 F.3d. at 172. Further, he cites to no "advanced and

---

[3]Although MY Imagination argues that it was not a "new business" because its principals were "both experienced businesses men with extensive familiarity with product licensing" and MY Imagination was "staffed with a veteran licensing team." These assertions fly in the face of the Sixth Circuit's statement that MY Imagination was a "new stationary company" and Crawford's Report in which he says MY Imagination is a "new business." Crawford Report at ¶ 23.

sophisticated method for predicting the probable results of contemplated projects." Kenford I, 67 N.Y.2d at 262. Rather, he relies on the projections by Rosenbaum, including one created for the purpose of enticing Yu to be his partner. First, Crawford's reliance on projections created by MY Imagination and interviews with Yu and Rosenbaum ignores that MY Imagination, Yu, and Rosenbaum have admitted in the record that lost profits are speculative.

Throughout the course of this case, MY Imagination has maintained that it could not demonstrate lost profits. In its Statement of Claims, MY Imagination presented only "rescissory" damages, and not any lost profits. See Doc. 45 at p.4. This position is consistent with its representation to the Court in its prior motion in limine that it should be permitted to seek rescissory damages because of the "admittedly speculative nature of Plaintiff's damages relative to lost profits or lost business opportunities ...." See Doc. 67 at p. 13.

Yu and Rosenbaum admitted at deposition that a claim by MY Imagination for lost profits was speculative. Yu testified as follows:

> Q. Would you agree with me that it's difficult to project profitability in stationery licensing?
> A. Yes.

See MZB's Exhibit B-1, dep. of Yu at 57:3-57:5. Rosenbaum testified more directly that, even if we assume a particular license had transferred to MY Imagination in June 2014, that "you could **speculate**, but you couldn't say definitively" how much net profit [MY Imagination] would have realized." See MZB's Exhibit B-2, dep. of Rosenbaum at 155:23-158:10 (emphasis added).

Putting aside these admissions that MY Imagination's lost profits would be

speculative, Crawford's two-step process still fails under New York law.  He uses  MZB's purported sales from 2013 and applies a "profit margin" derived from MY Imagination's 2014 projection of sales.  Crawford rejects MY Imagination's projections of 2014 gross sales - finding that, instead, MZB's "2013 net sales provides a reasonable foundation to sustain a claim for lost profits."  Crawford Report at ¶ 35.  However, Crawford relies on the MY Imaginations projections in forecasting a profit margin on future, unknown sales in 2014 and beyond.

Crawford also does not address the possibility that not every license would be transferred.  The record shows otherwise.  Crawford ignores the fact that MY Imagination got the most lucrative license, Lego, twice rejected the Nickelodeon license and Universal said that it would not have transferred its license to MY Imagination.  Crawford therefore has no basis to conclude which licenses would or would not be transferred, and the terms of any such transferred license.  Crawford's calculation that <u>all</u> licenses would transfer is contradicted by the record and unreliable.

Moreover, Crawford's reliance on projections of what MY Imagination thinks "might" have happened in 2014/2015 has been repeatedly rejected in New York as failing the standards of <u>Kenford I</u>.  In <u>Ho Myung Moolsan v. Manitou Mineral Water, Inc</u>., 2010 U.S. Dist. LEXIS 127869 (S.D.N.Y. Dec. 2, 2010), the plaintiff offered only projections of sales of bottles of water in support of its lost profits claim, with no documentary evidence to support the projections.  The district court rejected plaintiffs expert report, finding that "[w]ith such a lack of foundation, including lack of any independent research, Smith's Report stood for nothing more than the Court's characterization of it: 'My client tells me I can sell three million bottles and get fifteen

dollars a bottle."' Moolsan, at *25-26. The same rationale applies here. Crawford's assumption as to profit margin is based on MY Imagination telling him that it would have sales in 2014 of $25 million and that its profit margin would increase over that of MZB. Crawford, in fact, appears entirely unaware that MY Imagination and later IQHK, Yu's other company, controlled the Lego license since May 2014 and that actual sales data exists within the possession of Yu for 2015.

In sum, Crawford's "calculation, which assumes the occurrence of numerous successive hypothetical transactions [i.e., the transfer of licenses], constitutes precisely the sort of conjecture that the reasonable certainty standard prohibits and will not support an award of lost profit damages under New York law." Kidder , Peabody & Co. v. JAG Int'l Acceptance Group N.V., 28 F.Supp.2d 126, 132 (S.D.N.Y. 1998) (granting summary judgment, in part, "because defendant corporation was not entitled to lost profits as a matter of law").

The same result holds under the alternate, more conservative projection Crawford offers which is based solely on the Universal license. Again, Crawford relies entirely on an overly optimistic projection by MZB's CEO (projecting $3 million to $5 million of sales in a one line email with no supporting data). No actual data is utilized. MY Imagination did not request any actual sales figures from any licensee, including Universal, nor from any customer, such as Target and Walmart. Crawford's alternate calculation is therefore does not support a claim for lost profits.

### 3. Within the Parties' Contemplation

The final element of the Kenford I test requires MY Imagination to demonstrate that the parties contemplated the availability of lost profits as an element of damages for

a breach of contract. MZB says they did not, as evidenced by the following provision in the APA:

> Sole Remedy. The provisions of Section 16.1 ... constitute the sole and exclusive remedy .. . for any Loss ... ; provided that, the foregoing limitation shall not apply in any case of fraud or willful misconduct.... In no event will any Buyer Indemnified Party or Seller Indemnified party be entitled to loss of profit ... arising out of or resulting from any matter to which such person is entitled to indemnification under Section 16.1 .... (Ex. A, §16.4.2) (emphasis added)

According to MZB, the APA expressly provides that MY Imagination is not entitled to damages for loss of profit resulting from a breach of the APA.

MY Imagination disagrees, contending that the above provision applies only in instances of indemnification, not a dispute between the parties. The Court need not resolve this issue because as demonstrated above, MY Imagination cannot satisfy the other two elements of Kenford I.

### 4. Nominal Damages

As the Sixth Circuit noted, under New York law, where, as here, lost profits or other damages cannot be shown, plaintiffs are limited to nominal damages. In Washington v. Kellwood Co., 714 F. App'x 35, 41-42 (2d Cir. 2017), the Second Circuit, applying New York law, affirmed the award of nominal damages of $1 in a case where plaintiff could not satisfy New York's requirement of reasonable certainty in proving lost profits. See also Hirsch Elec. Co. v. Community Servs., Inc., 145 A.D.2d 603, 605 (App. Div. 1988) (holding that where plaintiff failed to prove its lost profits claim, "the injured party is entitled to recover as nominal damages a small sum fixed without regard to the amount of the loss, if any (Farnsworth, Contracts§ 12.8, at 838-839)").

As lost profits are not available MY Imagination, it is entitled only to an award of

nominal damages should it prove a material breach at trial.

### C. MY Imagination's Response

MY Imagination says that there is evidence to support its claim for lost profits. This argument attempts to down play the statements in the record in which it conceded that lost profits are not a viable damage theory and statements indicating that MY Imagination was a new business entity. MY Imagination's assertions fly in the face of the record evidence noted above. Most to the point, in its reply brief on its motion in limine seeking to establish the damages available at trial, MY Imagination advocated for rescissory damages and expressly rejected lost profits damages, stating:

> **Here, Plaintiff was a new business with no established history and approval of specific license transfers would be difficult to establish. Under these circumstances, due to the admittedly speculative nature of Plaintiff's damages relative to lost profits or lost business opportunities, rescissory damages are an available, appropriate and proper measure of damages for Breach of Contract**.

(Doc. 89 at p. 4-5) (emphasis added). These statements are significant. MY Imagination represented to the Court that (1) it is a new business; (2) has no history of sales; (3) cannot establish which, if any, licenses would transfer, and, most importantly, (4) any lost profits damages are speculative. As a matter of law, these and other admissions made by MY Imagination warrant summary judgment limiting it no more than nominal damages.

In opposing summary judgment, MY Imagination has not offered a declaration from anyone with personal knowledge, such as Yu, Rosenberg, Crawford, a licensor, to rebut the factual admissions. Rather, MY Imagination relies on Rosenbaum's speculation about what others might have said or thought about MY Imagination's ability

12

to secure licenses. This is insufficient.

MY Imagination also takes issue with the case law cited by MZB. MY Imagination first argues that the analysis set forth in Kenford I is not subject to summary judgment. This argument lacks merit. In Schonfeld v. Hilliard, 218 F.3d 164, 172 (2d Cir. 2000), the Second Circuit affirmed the grant of summary judgment where, applying Kenford I, plaintiffs lost profits were not "capable of measurement based upon known reliable factors without undue speculation."

MY Imagination also misstates the holding in Haven Assoc. v. Donro Realty Corp., 121 Ad.2d 504 (N.Y. App. Div. 1986), to argue that, once MY Imagination shows that MZB failed to use commercially reasonable efforts to assist the transfer of licenses, the burden of causation shifts to MZB to prove that individual licenses would not have transferred anyway. As both the Second Circuit and other courts have held, Haven does not provide for shifting of the burden of causation. See Nat 'l MKt. Share, Inc. v. Sterling Nat'l Bank, 392 F.3d 520, 527 (2d Cir. 2004) (rejecting Haven as standing for shift of burden of causation- "[i]n Haven, the plaintiff had already established proximate causation, and the court therefore shifted to the defendant the burden of proving the extent to which economic recession, rather than defendant's breach, had contributed to plaintiffs loss of future profits."); Nycal Offshore Dev. Corp. v. United States, 743 F.3d 837, 846, n.4 (Fed. Cir. 2014) ("as the Second Circuit explained in [Ntl. Mkt.], the plaintiff in Haven had already established proximate causation, and the court shifted to the defendant the burden of proof with respect to a factor that went to the quantum of damages.").

To show causation, MY Imagination, not MZB, must established that (1) MZB did

not use commercially reasonable efforts (which the Court presumes for purposes of MZB's motion) and (2) if it had, which licenses would have transferred to MY Imagination. For Universal, MY Imagination relies entirely on a self-serving, hearsay statement of Rosenbaum that the Universal license would have transferred. Rosenbaum's own belief cannot overcome the contradictory (and admitted) testimony given directly by Universal "made its own decision not to consent to the transfer of a stationary license from [MZB] to [MY Imagination] Doc. 124-2, Joint Statement of Facts at ¶ 73. As to Nickelodeon, MY Imagination admits that it received and then turned down an offered license. See Doc. 124-2, Joint Statement of Fact at ¶ 69 ("After the Licensor Letters were served, [MY Imagination] rejected the second license offer from Nickelodeon.")

Summary judgment is appropriate because MY Imagination cannot as a matter of law establish what, if any, licenses would have transferred. See Madcap Acquisitions LLC v. American Towers LLC, 2016 N.Y. Misc. LEXIS 2714, *11 (Sup. Ct. 2016) (granting summary judgment where plaintiff could not demonstrate that it would have entered into an agreement with a third-party under no obligation to do so).

In the end, is MY Imagination's own statements in its papers which establish that any calculation of lost profits is speculative. There are no genuine issues of material fact to case doubt on the record on MY Imagination's damage claim. MY Imagination simply does not have a triable claim for lost profit damages.

Finally, MY Imagination says that MZB failed to address Crawford's opinion on a theory for loss of business value. This argument does not carry the day. Crawford plainly states that: "it is my opinion that in these circumstances a short horizon lost

14

profits calculation is more appropriate than a calculation of business value based on long-term projections." Doc. 124-28, Crawford Report at ¶ 33. Crawford did not offer an opinion as to loss of business value.

V. Conclusion

For the reasons stated above, MZB's motion for summary judgment is GRANTED. MY Imagination is limited to nominal damages in the event the jury finds MZB breached the APA in failing to use reasonable commercial efforts to help transfer the licenses and/or improperly solicited customers.

SO ORDERED.


                                                  S/Avern Cohn
                                                  AVERN COHN
                                                  UNITED STATES DISTRICT JUDGE

Dated:
    Detroit, Michigan